UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Damon Mikell Kindell, | ) C/A No. 4:12-30-TMC-TER |
| Plaintiff, | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| Orangeburg-Calhoun Regional Detention Center Medical Staff; Nurse Weber; Correctional Officer Haywood; and Officer Tyler, | ) |
| Defendants. | ) |

Plaintiff, Damon Mikell Kindell ("Plaintiff"), is a local prisoner in the Orangeburg-Calhoun Regional Detention Center ("OCRDC") in Orangeburg, South Carolina, who is proceeding *pro se* and *in forma pauperis*. Plaintiff brings this civil action pursuant to 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) D.S.C., this matter is before the undersigned United States Magistrate Judge for report and recommendation following pre-service review. Having reviewed the Complaint in accordance with applicable law, the undersigned recommends that it be summarily dismissed.

### *PRO SE* AND *IN FORMA PAUPERIS* REVIEW

Title 28 U.S.C. § 1915A(a) requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." The *in forma pauperis* statute authorizes the District Court to dismiss a case if it is satisfied that the action is frivolous or fails to state a claim on which relief may be granted. 28 U.S.C. §1915(e)(2)(B)(i) and (ii). As a *pro se* litigant, Plaintiff's pleadings are accorded liberal construction

1

and held to a less stringent standard than formal pleadings drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). However, even under this less stringent standard, a *pro se* pleading remains subject to summary dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *Weller v. Dept. of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990).

**BACKGROUND**

Plaintiff is seeking monetary damages, claiming deliberate indifference to a serious medical need. In the caption of his Complaint, Plaintiff specifically names only OCRDC "Medical Staff" as a defendant. However, allegations in the Complaint also refer to Nurse Weber, Correctional Officer Haywood, and Officer Tyler. Plaintiff alleges that Haywood and Tyler transported Plaintiff from OCRDC to the Medical University of South Carolina ("MUSC") for appointments with Plaintiff's physician, Dr. Armstrong, on October 4, 2011 (Haywood), and on November 4, 2011 (Tyler). Plaintiff alleges that on each occasion "strict instructions were given to the transport officers . . . to be submitted to the jail Medical Staff namely ("Nurse Weber"). ECF No. 1, p. 3. Plaintiff alleges that Dr. Armstrong's orders and instructions that were given to Nurse Weber were to set up physical therapy appointments for Plaintiff. Accordingly, the undersigned liberally construes Plaintiff's Complaint as intending to name Nurse Weber, Correctional Officer Haywood, and Officer Tyler as Defendants in this case, as well.

Plaintiff alleges that on September 20, 2011, his right hand was severely injured (an artery and 13 nerves were completely severed, which Plaintiff alleges was diagnosed a "spaghetti wrist") and Plaintiff underwent surgery on the hand at MUSC, on September 21, 2011. Plaintiff alleges that

2

he was arrested and incarcerated in OCRDC on September 27, 2011, the day before he was to return to MUSC for a follow-up appointment with Dr. Armstrong. Plaintiff alleges that Nurse Weber made an appointment for Plaintiff with Dr. Armstrong on October 4, 2011 and again on November 4, 2011. However, Plaintiff alleges that "the jail and its medical staff ignor[ed]" Dr. Armstrong's instructions that physical therapy appointments be made for Plaintiff and physical therapy be administered to Plaintiff, or Plaintiff's hand "would be a lump of scar." As a consequence, Plaintiff alleges that he is "behind in [his] therapy" and "the full range of [his] hand will be lost." Plaintiff alleges that "the only 'therapy' [he has] gotten is 'occupational' which [his] doctor ha[d] to call down to their department and make that department squeeze me in to be seen at the last minute [,] thinking that the jail has made therapy appointment in Orangeburg already for [him]." Plaintiff adds that he "had to keep asking for pain relief and walking around with sheets for a sling and tied around [his] bunk to keep [his] hand elevated," and "this is very disturbing" that "[he's] always forgotten between doctor visits (jail to MUSC)." *See* ECF No. 1, p. 3-5.

## DISCUSSION

A claim for relief under 43 U.S.C. § 1983, must sufficiently allege that the plaintiff was injured by "the deprivation of any [of his or her] rights, privileges, or immunities secured by the [United States] Constitution and laws" by a "person" acting "under color of state law." *See* 42 U.S.C. § 1983; *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 690 & n.55 (1978) (noting that for purposes of § 1983 a "person" includes individuals and "bodies politic and corporate"); *see generally* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1230 (2002). It is well settled that only "persons" may act under color of state law, therefore, a defendant in a § 1983 action must qualify as a "person." For example, several courts have held that inanimate objects such

3

as buildings, facilities, and grounds are not "persons" and do not act under color of state law. *See Allison v. California Adult Auth.*, 419 F.2d 822, 823 (9th Cir. 1969) (California Adult Authority and San Quentin Prison not "person[s]" subject to suit under 42 U.S.C. § 1983); *Preval v. Reno*, 57 F. Supp.2d 307, 310 (E.D. Va. 1999) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."); *Brooks v. Pembroke City Jail*, 722 F. Supp. 1294, 1301(E.D.N.C. 1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."). Use of the term "medical staff" or the equivalent as a name for alleged defendants, without the naming of specific staff members, is not adequate to state a claim against a "person" as required in § 1983 actions. *See Barnes v. Baskerville Corr. Cen. Med. Staff*, No. 3:07CV195, 2008 U.S. Dist. LEXIS 48726, 2008 WL 2564779 (E.D. Va. June 25, 2008); *Martin v. UConn Health Care*, No. 3:99CV2158 (DJS), 2000 WL 303262, *1 (D. Conn. Feb. 09, 2000); *Ferguson v. Morgan*, No. 90 Civ. 6318, 1991 WL 115759 (S.D.N.Y. June 20, 1991). Plaintiff's Complaint, insofar as it names "Orangeburg-Calhoun Regional Detention Center Medical Staff" as a Defendant in this case, does not name a "person" allegedly acting "under color of state law," who is subject to a § 1983 claim. "Orangeburg-Calhoun Regional Detention Center Medical Staff" is not a proper defendant upon whom the United States Marshals Service could effect service of process, and against whom relief could be granted by this Court. Accordingly, the Complaint against Defendant Orangeburg-Calhoun Regional Detention Center Medical Staff should be dismissed, without prejudice and without issuance and service of process.

To the extent that Plaintiff's Complaint attempts to assert a § 1983 claim against Nurse Weber, Correctional Officer Haywood, and Officer Tyler, based on these individuals' alleged deliberate indifference to Plaintiff's serious medical needs, the Complaint fails to state a claim for

4

which relief may be granted by this Court and should be dismissed, without prejudice, and without issuance and service of process on these individual Defendants.

Persons in custody have the protections afforded by the Fourteenth and Eighth Amendments, which include the right to obtain adequate medical care. *Martin v. Gentile*, 849 F.2d 863, 866 (4th Cir. 1988) (explaining that the denial of medical care by state officials can give rise to claims under the Fourteenth Amendment's due process clause); *see also City of Revene v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 246 (1983) (holding that pretrial detainees have at least the same protections under the Fourteenth Amendment as post-trial detainees have under the Eighth Amendment); *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) ("[T]he Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee."); *Mitchell v. Aluisi*, 872 F.2d 577, 581 (4th Cir. 1989) ("A violation of the Eighth Amendment standard . . . may be used, however, to determine a due process violation.") (citing *Whisenant v. Yuam*, 739 F.2d 160, 163 n.4 (4th Cir. 1984)).

Deliberate indifference to a pretrial detainee's or prisoner's medical needs is actionable under § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). To establish a claim under the Fourteenth or Eighth Amendment, a pretrial detainee or inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the second prong, the prisoner must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety. *Id.* A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of

harm to a prisoner and disregards that substantial risk. *Id.* at 847; *Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837.

To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. *See Estelle*, 429 U.S. at 106. While the Constitution requires a prison to provide prisoners with medical care, it does not demand that a prisoner receive the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks & citation omitted) (alterations in original); *see also Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). A prisoner's disagreement as to the appropriate treatment fails to rise to the level of a constitutional claim and fails to create a genuine issue of material fact. *See Nelson*, 603 F.3d at 449; *see also O'Connor v. Pierson*, 426 F.3d 187, 202 (2d Cir. 2005) ("Lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for."); *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); *Fleming v. Lefevere*, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the

6

appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

In *Estelle*, the prisoner contended that other examinations should have been conducted by the prison's medical staff and that X-rays should have been taken. The United States Supreme Court pointed out that "not every claim by a prisoner that he has not received adequate medical treatment states a violation." *Estelle*, 429 U.S. at 105. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988); *cf. Whitley v. Albers*, 475 U.S. 312, 320 (1986) (a state's responsibility to attend to the medical needs of prisoners does not ordinarily clash with other equally important governmental responsibilities). Although the provision of medical care by prison or jail officials is not discretionary, the type and amount of medical treatment is discretionary. *Brown v. Thompson*, 868 F. Supp. 326 (S.D.Ga. 1994) (collecting cases).

Under *Estelle*, the failure of prison officials to take an inmate to outside hospitals or physicians as quickly or often as the inmate might have desired and any negligence or possible malpractice that might have occurred while the medical personnel were attempting to treat the prisoner's medical problem do not rise to the level of compensable constitutional violations because the conduct does not amount to deliberate indifference constituting unnecessary and wanton infliction of pain. *Estelle*, 429 U.S. at 104-05. In *Lamb v. Maschner*, 633 F. Supp. 351 (D. Kan. 1986), the district court ruled that the proper inquiry for indifference is whether the prison or jail provided *any* treatment, and that the inmate's agreement or disagreement with the nature and extent of treatment provided is irrelevant:

7

> Even though plaintiff and defendants have a differing opinion as to the proper treatment to be received by plaintiff, this does not in and of itself state a constitutional violation. *See Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976). Therefore, the key question in this case is whether the defendants have provided plaintiff with some kind of treatment, regardless of whether it is what plaintiff desires.

*Lamb*, 633 F. Supp. at 353; *see Walker v. Peters*, 863 F. Supp. 671 (N.D. Ill.1994) (under *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), "mere disagreements between doctor and patient about the course of treatment do not reflect 'deliberate indifference' on the part of the former, although if the patient is right he or she might have a common law (not a constitutional) claim for medical malpractice.") At most, Nurse Weber's alleged actions in this case might arguably constitute a sufficient basis on which to bring a negligence or malpractice case, which is not cognizable under § 1983. *Estelle*, 429 U.S. at 106. No facts showing medical indifference or a constitutional violation have been alleged. *See Daniels v. Williams*, 474 U.S. 327, 328-36 (1986); *Davidson v. Cannon*, 474 U.S. 344, 345-48 (1986); *Ruefly v. Landon*, 825 F.2d 792, 793-94 (4th Cir. 1987); *Pink v. Lester*, 52 F.3d 73 (4th Cir. 1995) (applying *Daniels* and *Ruefly*: "The district court properly held that *Daniels* bars an action under § 1983 for negligent conduct[.]"). The allegations in Plaintiff's Complaint does not set forth a plausible claim of constitutionally inadequate medical care against Nurse Weber, Correctional Officer Haywood, or Officer Tyler.

## RECOMMENDATION

Accordingly, it is recommended that the Complaint in this case be summarily dismissed, *without prejudice* and without issuance and service of process. *See Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams,* 490 U.S. 319 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Brown v. Briscoe*, 998 F.2d 201, 202-04 (4th Cir. 1993); *Boyce v. Alizaduh; Todd v. Baskerville*, 712 F.2d

at 74; *see also* 28 U.S.C. §§ 1915(e)(2)(B); 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

  Plaintiff's attention is directed to the important notice on the next page.

                   s/Thomas E. Rogers, III
                  Thomas E. Rogers, III
                  United States Magistrate Judge

March 8, 2012
Florence, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).